## THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY v. THOMAS W. LLOYD.

### No. 15,423.   (100 Pac. 271.)

MASTER AND SERVANT—*Injury to Employee—Defective Appliances.* Where an employee's injuries were caused by a defective coal-chute the special findings showed that the defendant was negligent, and a judgment for the plaintiff was affirmed.

Error from Atchison district court; BENJAMIN F. HUDSON, judge. Opinion filed February 6, 1909. Affirmed.

*William R. Smith,* and *H. M. Jackson,* for plaintiff in error.

*Henry Elliston, Joseph G. Waters,* and *John C. Waters,* for defendant in error.

*Per Curiam:* This action was commenced in the district court of Atchison county, April 25, 1901, by Thomas W. Lloyd against the Atchison, Topeka & Santa Fe Railway Company, to recover damages on account of injuries alleged to have been sustained by him on November 23, 1898, at Thatcher, Colo., while engaged in the performance of his duties as fireman on a locomotive engine owned and operated by the defendant. A trial was had in which the plaintiff recovered a judgment, and the case was brought to this court upon proceedings in error. The judgment was reversed and the case sent back for a new trial. (*Railway Co. v. Lloyd,* 68 Kan. 369, 75 Pac. 478.) A retrial was had March 17, 1906, and the plaintiff recovered a judgment for $12,000. The defendant brings the case here again on proceedings in error.

There are many assignments of error, but in the view we have taken they need not all be considered. The plaintiff was injured while attempting to take coal on the tender. The engine moved up to the coal-bins and

stopped in front of one to receive the coal. The plaintiff, by pulling a rope provided for that purpose, could cause a chute to be opened and the apron thereof to be lowered so that the coal would drop or slide down the apron into the tender. The apron was long enough to reach almost to the center of the tender, and was securely fastened to the coal-bin. It was the duty of the plaintiff to place the apron back in place when the coal had been deposited in the tender; which could be easily done when it was in proper repair, it being so constructed that it would return to its place automatically when lifted slightly upward. The plaintiff, while taking the coal, stood between the upper edge of the cab of the engine and the apron of the chute. At the time of the injury he lowered the apron of the chute and found the bin empty. He so informed the engineer, whose duty it then was to back the tender to the next bin, which he proceeded to do. The plaintiff attempted to put the apron in place, but was unable to lift it on account of its being out of repair. He was caught between the top of the cab and the apron, and crushed. The injury, and the manner in which it was received, are not disputed. The fact that the chute, of which the apron was a part, was out of repair is well established. The substantial question, and, as we think, the only question in the case, is whether the defendant was negligent in permitting the chute to be out of repair. This is a question of fact, which, in our view, is settled by the special findings returned by the jury. One hundred and thirty-four special findings were returned. Those material to the question of the defendant's negligence in permitting the coal-chute to be out of repair, which caused the injury complained of by the plaintiff, read:

"(91) Ques. State how high the front of the apron had to be raised to have the counter balances raise it up to an upright position. Ans. From two to two and one-half feet.

"(92) Q. Was there a door to the coal-chute or pocket inside of the apron? A. Yes.

"(93) Q. If you answer the last question 'Yes,' or in the affirmative, then was such door at the top thereof hinged to the top of the coal-chute or pocket? A. Yes.

"(94) Q. Was there a catch at each side of such coal-chute? A. Yes.

"(95) Q. If you answer the last question 'Yes,' or in the affirmative, then did such catch open automatically when the apron was pulled down and released the inner door? A. Yes.

"(96) Q. If you answer question 93 'Yes,' or in the affirmative, then did such catch automatically close when the apron was raised and carried up by the weights at the bottom thereof? A. When in good order, yes.

"(97) Q. Did the arms come in contact with any part of the coal-chute at any time, except when the front end of the apron was pulled down to its lowest possible position? A. Yes.

"(98) Q. Did the arms strike any part of the pocket or chute except the bumping-blocks? A. Yes.

"(99) Q. When the front of the apron was raised, did the arms at once leave the bumping-block? A. Yes, when in good working order.

"(100) Q. After the front of the coal-chute was raised a few inches, did the arms or weights have any effect upon the raising of the apron, other than to assist in pulling it up and holding it? A. No.

"(101) Q. Was there any defect in the spring catch at the upper or front end of the apron? A. Yes.

"(102) Q. If you answer the last question 'Yes,' or in the affirmative, then state what such defect was. A. Worn and bent, and would not catch at all times.

"(103) Q. If you answer question 101 'Yes,' or in the affirmative, then state when such defect was first discovered and by whom, and how long such defect had existed. A. By Jose Alirez, coal-heaver at Thatcher chutes, from April, 1898."

"(113) Q. If you find there was any defect in the apron or coal-chute immediately before the injury to plaintiff, state what such defect was. A. Defect in hinges, catches and bumping-blocks.

"(114) Q. If you find there was any defect in such apron or coal-chute immediately before the injury to

plaintiff, state how long such defect had existed.    A. Since April, 1898."

"(117) Q. State what defect in such apron on chute prevented the apron from returning to its normal position, and when such defect first became known to any employee of the company.    A.    Defect in bumping-blocks and catches known to employee since April, 1898."

These findings indicate quite clearly that the defendant was negligent in permitting this coal-chute to go unrepaired for such a great length of time.    The evidence by which they are sustained is not very strong, but it comes from witnesses in a position to know.    Two juries have reached the same conclusion upon it, and such conclusion has each time been sustained by the trial court.    We can not say that there is not sufficient evidence to sustain such conclusion, and feel compelled to accept the findings as final.

We have examined the other errors argued in the brief, and find none which demands consideration. They all relate to the facts which have been settled by the findings of the jury.    We are unable to say that any material error was committed by the court, and therefore the judgment is affirmed.